UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES,
    *Plaintiff*,

v.

ADRIAN BELLE,
    *Defendant.*

No. 3:18-cr-117-(VAB)-1

**RULING AND ORDER ON MOTION FOR COMPASSIONATE RELEASE**

Adrian Bell[1] ("Defendant") has moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Mot., ECF No. 40 (Apr. 28, 2020) ("Def.'s Mot."). The Government opposes Defendant's motion. Gov't Opp'n, ECF No. 41 (Apr. 30, 2020) ("Gov't Opp'n").

For the following reasons, the Mr. Bell's motion is **DENIED**.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

On December 13, 2018, after pleading guilty to one count of unlawful possession of a firearm as a convicted felon under 18 U.S.C. § 922(g)(1) and 924(a)(2), Mr. Bell was sentenced to sixty-five months (five years and five months) of imprisonment, three years of supervised released, and a special assessment of $100.00. Judgment, ECF No. 34 (Dec. 21, 2018).

Mr. Bell is incarcerated at USP McCreary in Pine Knot, Kentucky. Def.'s Mot. at 3.

On April 28, 2020, Mr. Bell moved for a compassionate release under 18 U.S.C. § 3582(c)(1)(A). Def.'s Mot. He attached medical records, a letter from Yale medical professionals and infectious disease experts, and a Southern District of New York ruling on a compassionate

---

[1] The parties reference Defendant as "Adrian Bell," but the case caption, Presentence Report authored by the Probation Office, and Judgment spell Defendants' last name as "Bell." The Court will use the spelling "Bell," as the parties use in their briefs regarding the current motion for compassionate release.

1

release motion in *United States v. Haney*, No. 19-CR-541 (JSR), 2020 WL 1821988 (S.D.N.Y. Apr. 13, 2020). Def.'s Exs., ECF No. 40-1.

On April 30, 2020, the Government filed a memorandum in opposition to Mr. Bell's motion for compassionate release. Gov't Opp'n.

On May 1, 2020, the Court held a telephonic conference on Mr. Bell's motion. Minute Entry, ECF No. 44 (May 1, 2020).

On the same day, Mr. Bell submitted supplemental medical records from the Bureau of Prisons ("BOP"). Def.'s Ex. 3, ECF No. 43 ("BOP Medical Records").

Mr. Bell has been in custody since his arrest on March 18, 2018. Gov't Opp'n at 2. He was held at the Wyatt Detention Facility ("Wyatt") from October 9, 2018 until his sentencing. *Id.* His sentence is currently scheduled to be completed on February 16, 2023. *Id.* at 5.

## II.   STANDARD OF REVIEW

As of December 21, 2018, a court may modify a term of imprisonment on compassionate release grounds in two circumstances: (1) "upon motion of the Director of the Bureau of Prisons;" or (2) "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Gotti*, No. 02 CR 743-07 (CM), 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020) ("In December 2018, as part of the First Step Act, Congress worked a change to th[e] rule of long standing" that a court could only modify a sentence upon motion from the Bureau of Prisons. "A court may now consider a motion for compassionate release made by a defendant who has exhausted his administrative remedies by petitioning the Director of the BOP to make such a motion, assuming the Director fails to act on the inmate's request within thirty days[.]").

In determining whether to grant a motion to modify a sentence, a court must consider the factors set forth in 18 U.S.C. § 3553(a). The Court may only grant such a modification if it finds that "extraordinary and compelling reasons warrant" a modification, or that

> the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community.

*Id.* The Court must also find that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

### III. DISCUSSION

The applicable policy statement for compassionate release is found in the U.S. Sentencing Guidelines (U.S.S.G) § 1B1.13 and Commentary. U.S.S.G. § 1B1.13 states in part:

> [T]he court may reduce the term of imprisonment if . . . the court determines that [e]xtraordinary and compelling reasons warrant the reduction; . . . [t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and [t]he reduction is consistent with this policy statement.

*United States v. Lisi*, No. 15 CR. 457 (KPF), 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) (quoting U.S.S.G. § 1B1.13(1)(A), (2), and (3)). While there exists a dispute among district courts as to whether a Court must still defer to the BOP's determination of what qualifies as an "extraordinary and compelling reason" to modify a sentence, a majority of district courts, including in this District, have found that courts may make that determination independently. *See*, *e.g.*, *United States v. Rivernider*, No. 3:10-cr-222 (RNC), 2020 WL 597393, at *3 (D. Conn. Feb. 7, 2020) (collecting cases); *Lisi*, 2020 WL 881994, at *3 (collecting cases). Yet, U.S.S.G. "§ 1B1.13's descriptions of 'extraordinary and compelling reasons' remain current," *United States v. Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020), and

3

"[t]he standards for considering the motion remain helpful as guidance to courts which hear these motions without the BOP as an intermediary," *United States v. Zullo*, No. 09 Cr. 0064-02 (GWC), 2019 WL 7562406, at *3 (D. Vt. Sept. 23, 2019).

The Commentary to U.S.S.G. § 1B1.13 identifies "four categories of criteria for compassionate release: 'Medical Conditions of the Defendant,' 'Age of the Defendant,' 'Family Circumstances,' and 'Other Reasons.'" *Rivernider*, 2020 WL 597393, at *2 (quoting U.S.S.G. § 1B1.13, Commentary (1)(A)–(D)). With regard to the "other reasons" category, "'extraordinary and compelling reasons exist' when, [a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with," the defendant's medical conditions, age, or family circumstances. *Id.* at *3 (quoting U.S.S.G. § 1B1.13, Commentary (1)(D)).

In any event, "[t]he defendant has the burden to show he is entitled to a sentence reduction," *Ebbers*, 2020 WL 91399, at *4 (citing *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)), and "[d]istrict courts have broad discretion in deciding whether to grant or deny a motion for a sentence reduction," *see United States v. Tagliaferri*, No. 13 CR. 115 (RA), 2019 WL 6307494, at *3 (S.D.N.Y. Nov. 25, 2019) (quoting *United States v. Jefferson*, 662 F. App'x 36, 38 (2d Cir. 2016)).

Mr. Bell moves for compassionate release "due to the [extraordinary and compelling reasons' confronting the federal prison system by the [COVID-19] pandemic, and the unique risk that Mr. Bell faces due to his health conditions." Def.'s Mot. at 1. Mr. Bell, age 26, argues that he suffers from "asthma serious enough that he needs to use an albuterol inhaler four to five times a day." *Id.* at 2. He also argues that he suffers from scarred lung tissue as a result of a shooting years ago which collapsed a lung and left him with a bullet still lodged in his back. *Id.*

He submitted medical records from his time in custody at the New Haven Correctional Center in 2018 in support of these contentions. Def.'s Ex. 1, ECF No. 40-1 at 1–3 (New Haven Correctional Center Chart Summary (Sept. 28, 2018)).

Mr. Bell argues that his asthma places him in a high risk category should he contract COVID-19, and that his vulnerability "is heightened by the particular circumstances at USP McCreary," where he "cannot practice regular hand hygiene, and he cannot effectively socially distance himself from other inmates . . . ." Def.'s Mot. at 3. He cites to a letter from Yale School of Medicine "medical professionals and experts in infectious disease and/or prison populations" to Connecticut Supreme Court Associate Justice Andrew J. McDonald. *Id.* The letter states that "[t]he risk posed by infectious diseases in jails and prisons is significantly higher than in the community, both in terms of risk of transmission, exposure, and harm to individuals who become infected." *Id.*; Def.'s Ex. 2, ECF No. 40-1 at 4–11 (Letter from Yale School of Medicine Faculty to Justice Andrew J. McDonald, Connecticut Supreme Court, submitted by the ACLU of Connecticut (Mar. 27, 2020), *available at* https://www.acluct.org/sites/default/files/field_documents/2020-03-26_letter_to_committee_requesting_emergency_alteration_of_rules.pdf).

In the Government's view, however, Mr. Bell's "medical conditions do not outweigh the significant risk that Bell poses to the community were he to be released to home confinement." Gov't Opp'n at 6. The Government argues that the cases wherein courts have granted incarcerated individuals compassionate release due to the COVID-19 pandemic are distinct from Mr. Bell's case because they involve defendants who were deemed not to present a danger to the community and they had in many cases served the majority of their sentences, which Mr. Bell has not. *Id.* at 6–8. The Government points out that Mr. Bell that he has served less than half of

his sentence, has a history of violent incidents, including while in custody, and that the conviction for which he is currently incarcerated is for illegal possession of a firearm with an obliterated serial number while on state probation. *Id.* at 7–8. While the Government admits Mr. Bell's "medical condition does raise valid and legitimate concerns," its position is that his "offense of conviction, his criminal history[,] and his behavior, both while on probation and while previously incarcerated, present grave concerns as to the safety of others if he were to be released under any circumstance, let alone circumstances that severely impact the efficacy of proper supervision." *Id.* at 9.

The Court agrees.

As an initial matter, the Court notes that normally, under 18 U.S.C. § 3582(c)(1)(A), a court may not modify or reduce a defendant's sentence on that defendant's motion when the defendant has not exhausted his administrative remedies by either (1) appealing a failure of the BOP to bring such a motion on the defendant's behalf or (2) the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility. Mr. Bell argues "the Court should determine that the exhaustion requirement is satisfied as of April 25, 2020, 30 days from the date the BOP began reviewing all inmates for compassionate release," or that the exhaustion requirement should be waived in his case, as this Court and others have done in other instances during the current pandemic. Def.'s Mot. at 10–15 (citing, among others, *United States v. Gileno*, No. 3:19-cr-161-(VAB)-1, 2020 WL 1916773, at *5 (D. Conn. Apr. 20, 2020); *Haney*, 2020 WL 1821988). The Government, while acknowledging that the courts remain divided on whether the exhaustion requirement may be waived, maintains the position that it may not be waived. Gov't Opp'n at 3–4.

"Even where exhaustion is seemingly mandated by statute . . . , the requirement is not absolute." *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019). "[T]he requirement of

6

completing the administrative process may be waived 'if one of the recognized exceptions to exhaustion applies.'" *United States v. McCarthy*, No. 3:17-cr-0230 (JCH), 2020 WL 1698732, *3 (D. Conn. Apr. 8, 2020) (quoting *United States v. Perez*, No. 17 CR. 513-3 (AT), 2020 WL 1546422, at *2 (S.D.N.Y. Apr. 1, 2020))). These exceptions include: (1) where exhaustion would be futile, including where undue delay due to exhaustion may result in "catastrophic health consequences;" (2) where "the administrative process would be incapable of granting adequate relief;" and (3) where "pursuing agency review would subject plaintiffs to undue prejudice." *Washington*, 925 F.3d at 118–20.

Thus, whether the exhaustion requirement may be waived in a given case is closely related to analysis of the substantive underlying reasons for a defendant's motion for compassionate release. The Court therefore now turns to that substantive analysis.

Since the outbreak of the COVID-19 pandemic, numerous courts within this Circuit have held that a defendant's pre-existing health conditions—respiratory conditions in particular—in combination with the increased risks of COVID-19 in prisons constitute "extraordinary and compelling reasons" warranting relief. *See, e.g.*, Order on Def.'s Mot. for Compassionate Release at 2–3, *United States v. Norris*, No. 3:17-cr-106 (SRU) (ECF No. 119), 3:18-cr-243 (SRU) (ECF No. 37) (D. Conn. Apr. 16, 2020) ("[Mr.] Norris suffers from asthma and uses an Albuterol inhaler to treat his symptoms. Health officials have recognized that individuals with chronic respiratory disease are deemed at greater risk of COVID-19. Due to his incarceration, [Mr.] Norris is unable to properly safeguard against infection. Therefore, for the reasons set forth in his motion, I conclude that his medical condition and current conditions of confinement constitute extraordinary and compelling reasons to reduce his sentence[.]" (internal citations omitted)); *United States v. Smith*, No. 12 CR. 133 (JFK), 2020 WL 1849748, at *1, *4 (S.D.N.Y.

Apr. 13, 2020) ("[Mr.] Smith is 62 years old and suffers from multiple physical ailments. He has been treated for, among other things, asthma, high cholesterol, blood clots, a thyroid condition, and suspected multiple myeloma . . . . [Mr.] Smith's age and medical conditions—such as his asthma—place him at a higher risk for developing serious complications should he be exposed to COVID-19 while at the MDC or a halfway house, and would substantially diminish his ability to provide self-care within those environments." (citing U.S.S.G. § 1B1.13 comment n.1(A)(ii)); *McCarthy*, 2020 WL 1698732, at *5 ("McCarthy is 65 years old and suffers from COPD, asthma, and other lung-related ailments . . . . The defendant's age and medical condition, taken in concert taken in concert with the COVID-19 public health crisis, constitute an extraordinary and compelling reason to reduce McCarthy's sentence."); *United States v. Hernandez*, No. 18 Cr. 834 (PAE), 2020 WL 1684062, at *3 (S.D.N.Y. Apr. 2, 2020) (footnotes omitted)) ("COVID-19 presents a heightened risk for incarcerated defendants . . . with respiratory ailments such as asthma. The Centers for Disease Control warns that persons with asthma are at high risk of serious illness if they contract the disease." (footnotes omitted)).

Mr. Bell's submitted medical records show that he suffers from asthma for which he is prescribed an albuterol inhaler and that he has scar tissue on his lungs due to a gunshot wound, *see* New Haven Correctional Center Chart Summary; BOP Medical Records; and the Government concedes that "there is no doubt that any respiratory condition[] can materially increase an inmate's risk from COVID-19 and can be appropriate grounds for compassionate release," Gov't Opp'n at 6.

But Mr. Bell has not suffered "an asthma exacerbation in years", and he does not allege—nor is there any evidence—that his lung tissue scarring has caused him any particular respiratory issues. *See* BOP Medical Records (describing asthma: "Asymptomatic; no

complaints. States he hasn't had an asthma exacerbation in years."); New Haven Correctional Center Chart Summary (findings from a 2013 examination of the bullet in Mr. Bell's chest: "There is some scarring in the right upper lobe presumably a consequence of the bullet track. The lung fields are otherwise clear and unremarkable. . . . [T]here is no air space disease, congestive heart failure or pleural effusions evident."). Additionally, at the age of 26, Gov't Opp'n at 6, he is substantially younger than many of those who have been granted compassionate release for asthma and other conditions during the pandemic. *Smith*, 2020 WL 1849748, at \*1 (granting release to 62-year-old with asthma, high cholesterol, blood clots, a thyroid condition, and suspected multiple myeloma); *McCarthy*, 2020 WL 1698732, \*5 (granting release to 65-year-old with COPD, asthma, and other lung-related ailments); *Gileno*, 2020 WL 1916773, at \*5 (granting release to 47-year-old with asthma, a history of pneumonia as an adult, and "hyperactive airway disease" (see defendant's motion for compassionate release, ECF No. 40, for defendant's age)).

As of May 4, 2020, McCreary had reported that one inmate had tested positive for COVID-19. *COVID-19, Coronavirus*, U.S. BUREAU OF PRISONS (May 4, 2020), https://www.bop.gov/coronavirus/; Fed. R. Evid. 902(5) ("The following items of evidence are self-authenticating; . . . (5) Official Publications. A book, pamphlet, or other publication purporting to be issued by a public authority."); *United States v. Capozzi*, No. 3:16-cr-347, 2020 WL 1849777, at \*2 (M.D. Pa. Apr. 13, 2020) ("We further take judicial notice of recent policies and procedures adopted by LCP to prevent or limit the spread of COVID-19 within the prison.").

Given Mr. Bell's youth and his current health status, there is insufficient evidence in this record that his current BOP facility cannot adequately care for him. *See United States v. Rodriguez*, No. 16-CR-167 (LAP), 2020 WL 1866040, at \*4 (S.D.N.Y. Apr. 14, 2020) (denying

compassionate release to a 26-year-old with "reportedly well controlled" asthma, stating: "All he has done is to note that he has asthma, he is in prison, and there is a COVID-19 outbreak nationwide. That is not enough.").

More importantly, "compassionate release is appropriate only where the defendant is not a danger to the safety of any other person or to the community." *United States v. Wong Chi Fai*, No. 93-CR-1340 (RJD), 2019 WL 3428504, at *3 (E.D.N.Y. July 30, 2019) (internal citations omitted); *see also Gotti*, 2020 WL 497987, at *6 (denying compassionate release to a Gambino Family mob boss, noting that "[a] court is not required to reduce a sentence on compassionate release grounds, even if a prisoner qualifies for such reduction because of his medical condition").

Specifically, 18 U.S.C. § 3142(g) requires courts to consider (i) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a . . . firearm, explosive, or destructive device," (ii) "the weight of the evidence against the person," (iii) "the history and characteristics of the person," and (iv) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Wong Chi Fai*, 2019 WL 3428504 at *3 (internal citations omitted); *see also Ebbers*, 2020 WL 91399, at *6 ("Relevant factors include the nature of the offense, the history and characteristics of the defendant, and the nature of the danger." (citing U.S.S.G. § 1B1.13(2) (incorporating 18 U.S.C. § 3142(g) factors))).

Courts have found during the coronavirus pandemic that, even where an individual has medical conditions which make him vulnerable to COVID-19, the individual's danger to the community may ultimately outweigh any health concerns and the balance of factors would weigh against release. *See, e.g.*, *United States v. Morales*, No. 3:19-cr-00121 (KAD), 2020 WL

2097630, at *3 (D. Conn. May 1, 2020) (denying compassionate release to a 30-year old with asthma whose underlying offense involved armed assault of the mother of his children, who has a significant criminal history, and who "has faced incrementally greater periods of incarceration over the years with little or no deterrent effect"); *United States v. Gamble*, No. 3:18-cr-0022-4 (VLB), 2020 WL 1955338, at *5 (D. Conn. Apr. 23, 2020) (denying a motion to modify defendant's sentence under 18 U.S.C. § 3582(c)(1)(A) where he had served only 26 months of a 92-month sentence, had a significant criminal history (Category VI), and "was cavalier and unapologetic about his illegal possession of deadly weapons"); *United States v. Butler*, No. 19 CR. 834-10 (PAE), 2020 WL 1689778, at *3 (S.D.N.Y. Apr. 7, 2020) (denying compassionate release to an individual with asthma and a heart condition because his "criminal records reflect[] a pattern of violent and dangerous conduct," with "two convictions, two years apart, for criminal possession of a loaded firearm, and a conviction for robbery in the first degree and criminal possession of a loaded firearm," and his underlying conviction involving gang activity and the discharge of firearms).

Mr. Bell's underlying conviction for unlawful possession of a firearm as a convicted felon stems from an incident on March 18, 2018, when New Haven Police Department officers conducted a motor vehicle stop and Mr. Bell, the passenger, fled from officers with a firearm he possessed. Presentence Report ¶¶ 7–8, ECF No. 31 (Dec. 18, 2018). Mr. Bell had two prior felony convictions, one for assault and one for first degree robbery. *Id.* ¶ 77. He committed the firearm offense for which he is presently incarcerated less than two and a half months after his release from a jail sentence. *Id.* He had committed his robbery offense only three days after his release from a jail sentence. *Id.*

The U.S. Probation Office calculated Mr. Bell's criminal history as category V, with a guideline imprisonment range of 70–87 months. *Id.* ¶ 58. The Probation Office stated in Mr. Bell's probation report:

> To date, no term of imprisonment has had a deterrent effect on Mr. Bell[]. It is unlikely that the sentence imposed in this case will have any greater impact. Unfortunately, the defendant appears immersed in the violent culture of the street life he was raised in, modeled by his father, and does not yet have the willingness or ability to escape it. He is strongly encouraged to make a clear and distinct break from former associates upon his release from imprisonment and to commit to the idea that an alternate lifestyle is available to him if he embraces the support he will receive while on supervised release.

*Id.* ¶ 78.

Mr. Bell continued to engage in violent behavior after being taken into custody for his underlying offense. On November 23, 2018, he was charged with assault with a weapon while in custody at Wyatt. *Id.* ¶ 4. "At approximately 12:41 p.m., multiple detainees were fighting with a weapon (chair) and an emergency lockdown was initiated." *Id.* Video showed that Mr. Bell and others "jumped the victim" and "str[uck] the victim with chairs to the head." *Id.*

In light of Mr. Bell's history of violent behavior and possession of firearms, and his repeated willingness to engage in criminal conduct very shortly after completion of incarceration, and the fact that he has not yet served even half of his sentence, Mr. Bell has not shown that he would not be a danger to any other person or the community, if the Court were to grant his motion for compassionate release.

Accordingly, having considered all of the factors required by U.S.S.G. § 1B1.13, as well as those set forth in 18 U.S.C. § 3553(a), Mr. Bell's motion for compassionate release will be denied. *See Butler*, 2020 WL 1689778, at *3 ("While the prospect of contracting COVID-19

undeniably presents a serious risk to Butler's health, his release some 45 months early at least equally exposes the community to a serious risk that he would resume violence.").

## IV. CONCLUSION

For the reasons explained above, the Court **DENIES** the motion for compassionate release.

**SO ORDERED** at Bridgeport, Connecticut, this 5th day of May, 2020.

    /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge